**UNITED STATES DISTRICT COURT**
**DISTRICT OF ARIZONA**

| | |
|---|---|
| **Kevin Polston,**<br>Petitioner<br>-vs-<br>**Dora B. Schriro,**<br>Respondent | CV-07-2335-PHX-PGR (JRI)<br><br>**REPORT & RECOMMENDATION**<br>**On Petition for Writ of Habeas Corpus**<br>**Pursuant to 28 U.S.C. § 2254** |

## I. MATTER UNDER CONSIDERATION

Petitioner, incarcerated at the time of his petition and presently by the Arizona Department of Corrections, filed through counsel a Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254 on November 28, 2007 (#1). On April 14, 2008, Respondents filed their Answer (#14). Petitioner filed a Reply on June 4, 2008 (#16).

The Petitioner's Petition is now ripe for consideration. Accordingly, the undersigned makes the following proposed findings of fact, report, and recommendation pursuant to Rule 8(b), Rules Governing Section 2254 Cases, Rule 72(b), Federal Rules of Civil Procedure, 28 U.S.C. § 636(b) and Rule 72.2(a)(2), Local Rules of Civil Procedure.

## II. RELEVANT FACTUAL & PROCEDURAL BACKGROUND

### A. PROCEEDINGS AT TRIAL

In 1991, Petitioner was convicted of 19 criminal offenses stemming from a string of seven armed robberies or attempts he committed in July and August 1990. (Petition, #1, Exhibit 20, Mem. Dec. at ¶ 2.) (Exhibits to the Petition, #1, are hereinafter referenced as "Exhibit ___.") He was sentenced to concurrent prison terms on all the convictions, ranging from ten and one-half to twenty-eight years. (*Id.*)

## C.  PROCEEDINGS BEFORE BOARD OF EXECUTIVE CLEMENCY

In 1994, Petitioner applied to the Arizona Board of Executive Clemency ("Board") for commutation of his sentence under the Disproportionality Review Act, 1994 Ariz. Sess. Laws, ch. 235.  (Exhibit 20, Mem. Dec. at 2-3, ¶ 3.) In disposing of Petitioner's subsequent special action appeal, the Arizona Court of Appeals described the nature of that Act as follows:

> The Act was an attempt to mitigate the disparity in sentencing between those convicted of crimes before 1994, when the sentencing statutes were amended, and those convicted of offenses occurring in 1994 or later. Those convicted of certain offenses prior to 1994 had been treated more harshly than those convicted of the same offenses after the statutes had been amended. The Act became effective in July 1994 and was repealed on June 30, 1996.

(*Id.* at 3, ¶ 3, n. 3 (citations omitted).)  The Arizona court described the operation of the act as follows:

> Under the Act, inmates meeting certain initial qualifications were entitled to a disproportionality review hearing.  After a hearing, the Board was required to recommend commutation if it determined that the sentence was excessive and that a substantial probability existed that if the offender was released the offender would conform to the law. The Board then sent recommendations for commutation to the governor for action. If the Board made a unanimous recommendation for commutation and the governor failed to act within ninety days of receiving the recommendation, the recommendation automatically became effective.

(*Id.* at 3, ¶ 3 (citations omitted).)

On January 13, 1995, the Board issued Petitioner a letter notifying him that they had determined he was eligible for consideration of commutation on 17 of his 19 sentences, specifically counts "A03-A18, B01."  (Exhibit 1.)  This referenced the Arizona Department of Corrections system of notation, which had designated the 19 counts as "A01 to A18 and B01."  (Exhibit 20, Mem. Dec. at 2, ¶ 2.)  The Board's letter further outlined a process of two hearings, one *in absentia* to address the excessiveness of the sentence, and one with Petitioner present to address likelihood of Petitioner's good behavior upon release. (Exhibit 1.)

At the conclusion of the last of those two hearings, held May 10, 1995, the Board

issued a notice of the results, dated May 12, 1995.  That notice advised that the Board would make the following recommendation to the Governor:

> RECOMMEND TO COMMUTE A03, A06, A09, A12, A15, A18 FROM 20 YRS. TO 12.5 YRS,
> RECOMMEND TO COMMUTE A04, A07, A10, A13 FROM 28 YRS. TO 17. 5 YRS.
> RECOMMEND TO COMMUTE A05, A08, A11, AI4 AI7 FROM 20 YRS. TO 12.5 YRS.

(Exhibit 2, Notice 5/12/95.)

Unfortunately, the Board failed to address counts A16 and B01.[1]  (Exhibit 20, Mem. Dec. at 4, ¶ 4.)  Count A16 was for attempted armed robbery with a 20 year sentence, and count B01 was for armed robbery and carried a sentence of 28 years.  (*Id.*)

Eventually, the Board's incomplete recommendation was submitted to the Governor's Office. Governor Symington apparently issued a letter denying the recommendation, but failed to personally sign the denial.[2]  Subsequently, in *McDonald v. Thomas*, .202 Ariz. 35, 38, 40 P.3d 819, 822 (2002), the Arizona Supreme Court held "that to be effective as an official act, the governor's denials of the Board's commutation recommendations had to bear the governor's own signature as well as the attestation of the Secretary of State."  (Exhibit 20, Mem. Dec. at 4, ¶ 5.) Consequently, the governor's denial was ineffective, and the passage of the ninety days required by the Act resulted in the automatic approval of the Board's recommendation.  (*Id.*)  On April 23, 2002, the Board issued it's Notice (Exhibit 4), advising Petitioner that the Board's recommendation had become effective. That notice again omitted any reference to counts A16 and B01.

----

[1]  Counts A01 and A02 had been excluded from eligibility in the Board's initial determination letter. (Exhibit 1.)

[2]  "The reader will note that the letter [to the Board] is on plain paper and bears no indication, by letterhead or any other form of imprint, that it came from Governor Symington's office. The letter has a signature line under which are typed the words 'Governor or Representative.' Finally, the letter is signed with an illegible signature. Nothing in the letter indicates the name of the person who actually signed it or, if the person was a 'representative' of Governor Symington, who that representative might have been or what official position, if any, he or she might have held." *McDonald,* 202 Ariz. at 39, 40 P.3d at 823 (2002).

Petitioner subsequently discovered the omission of the two counts, and in January 2004, began correspondence with the Board, the Arizona Department of Corrections, and the State in an effort to have the omitted sentences commuted.   On February 17, 2004, Petitioner's counsel was advised that Petitioner's request was being denied.  (Exhibit 12, Decl. of Bartels at 1-2.)

## D.  PROCEEDINGS ON SPECIAL ACTION

**Trial Court** -, and on March 23, 2004, he filed a Special Action Complaint (Exhibit 9) in the Arizona Superior Court. That complaint alleged that the omission of the counts was an "inadvertent clerical error," perpetuated from the May 12, 1995 notice through the April 23, 2002 notice, and that the true decision of the Board had been to recommend commutation of all seventeen eligible sentences.  Petitioner alleged that the refusal to commute the omitted sentences was a violation of "the Due Process and Equal Protection guarantees of the United States Constitution."  (*Id.* at 11, ¶ 39.)

In support of his complaint, Petitioner submitted affidavits of the Chairman of the Board (Exhibit 5) and the two other panel members involved (Exhibits 6 and 7), all avowing their belief that the Board's true recommendation was commutation on all sentences, and that the oral pronouncement should govern the written notices.   Unfortunately, the tape recordings of the hearings had been destroyed in the interim.  (Exhibit 5, Chair Affid. at 3, ¶ 8.)

On July 28, 2004, the trial court issued a Minute Entry (Exhibit 13), concluding that the proper remedy was to deny the request for declaratory and injunctive relief and to remand the matter to the Board for reconsideration of the application as to the omitted counts. Judgment to that effect was entered September 10, 2004. (Exhibit 14, M.E. 9/10/4.)

**Arizona Court of Appeals** - Petitioner appealed the denial of his special action. (Exhibit 15, Not. of Appeal 10/8/04.)   The appeal was stayed while the Board and the Governor reconsidered the commutation of the omitted sentences.   (Exhibit 17, Order 12/30/04.) Eventually commutation was denied, and the appeal was reinstated. (Exhibit 19,

Order 2/28/05.)

On May 23, 2006, the Arizona Court of Appeals issued its Memorandum Decision (Exhibit 20), concluding that the Governor solely possessed the power of clemency and the Board's omission of the two counts had denied the Governor the opportunity to exercise that power, and therefore the failure to issue a proper denial of the Board's recommendation could not be deemed a grant of clemency. The court concluded that thus the trial court's decision to direct a new hearing on the omitted sentences was a proper remedy.

**Arizona Supreme Court** - Petitioner then sought review by the Arizona Supreme Court, which was summarily denied on January 10, 2007. (Exhibit 21, Order.)

## C.  REHEARING BEFORE BOARD

During the pendency of Petitioner's appeal, the Board revisited his application, and on December 7, 2004, recommended commutation of the omitted sentences. (Exhibit 16, Letter 12/7/04.)  On February 22, 2005, Governor Napolitano issued a properly signed and attested denial of clemency (Exhibit 18).

## D.  PRESENT FEDERAL HABEAS PROCEEDINGS

Petitioner instituted the present federal proceedings by filing through counsel a Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254 on November 28, 2007 (#1).  The Petition contains a single ground for relief: that the State's refusal to correct the effects of the failure to comply with the statutory procedures was arbitrary and capricious and resulted in a denial of Due Process.  In support of his claim, Petitioner replies primarily upon *Board of Pardons v. Allen*, 482 U.S. 369 (1987).

On April 14, 2008, Respondents filed their Answer (#14).  Respondents concede that the Petition is timely, that the claim is properly exhausted, and even that the result seems unfair.  Nonetheless, Respondents argue that: (1) the state courts' determination turned upon state law (*i.e.* the separation of powers as to executive clemency), and thus is not subject to judicial review and definitely not federal habeas review; (2) that the proper remedy is not

commutation but rehearing, which was granted; (3) the loss of the windfall from the defectiveness of the governor's original denial occurred from Petitioner's failure to seek a timely rehearing on the omitted counts; and (4) the Board's actions were a mere oversight.

Petitioner filed a Reply on June 4, 2008 (#16), arguing: (1) that federal habeas review is not limited to reviewing judicial decisions, and thus the Arizona courts' lack of power to direct commutation does not preclude habeas relief; (2) that the Governor's subsequent denial of clemency on the omitted counts is not controlling; (3) that the Board's use of cryptic references to the counts precluded discernment of the error, and does not excuse the Board's error.

## III. APPLICATION OF LAW TO FACTS

## A.  INDEPENDENT AND ADEQUATE STATE GROUND

Petitioner's claim is not reviewable by this habeas court, because the Arizona courts disposed of it on the basis of an independent and adequate state ground, *i.e.* is that the Court was without authority to direct a grant of clemency.  The Court reasoned:

> The Arizona Constitution gives the governor the exclusive authority to commute a sentence and the governor may exercise that authority only subject to conditions and restrictions imposed by law.  The Board's mistake cannot deprive the governor of the exclusive power under the constitution to grant or deny commutations. Nor does our equitable power allow us to exercise discretion constitutionally assigned to other branches of government.

(Exhibit 20, Mem. Dec. at 8-9, ¶ 13.)

**Discretion to Raise *Sua Sponte*** - Respondent has not expressly invoked the mantra of "independent and adequate state grounds." However, the gist of their argument is plainly that the state court's decision was founded upon state law and is thus unreviewable in this Court.   The related defense of procedural default is an affirmative defense and is generally waived if not raised. *Vang v. Nevada*, 329 F.3d 1069 (9th Cir. 2003) (applying to procedural bar.   Although the federal courts retain discretion to raise the matter *sua sponte*, that discretion is generally limited to situations where the defense appears from the face of the petition or where "principles of comity, federalism, and judicial efficiency" call for it to be

applied. *Id.* at 1073.

Here, the defense appears from the face of the petition. Petitioner argues that despite presenting his federal claims, his special action was disposed of by the trial court and the Arizona Court of Appeals without reaching the federal issues. (Petition, #1 at 19-20, ¶ 34, and at 21, ¶ 40.)

In addition, the interests of comity and federalism call for application of the principle despite any waiver. To the extent that Petitioner invites this Court to find a due process violation in the state court proceeding, it would be unseemly for this Court to find the state court to have acted improperly in failing to do what that court found it could not do under Arizona law, *i.e.* undertake to exercise the governor's clemency discretion.

**Application to Substantive Bar to Relief** - Where a state court has denied a Petitioner's claim based upon state law which is independent of the federal issue and sufficiently well developed and regularly applied so as to be adequate, then the federal courts will not disturb that judgment by revisiting the federal issue. *Coleman v. Thompson*, 501 U.S. 722, 729 (1991). While ordinarily the independent and adequate state ground is applied to procedural defaults, *e.g.* filing deadlines, waiver rules, etc., "[t]he rule applies with equal force whether the state-law ground is substantive or procedural." *Lee v. Kemna,* 534 U.S. 362, 375 (2002).

**Independence and Adequacy** - Although Petitioner has not addressed the issue, the undersigned finds no basis for finding that the Arizona law was not independent and adequate.

The Arizona court's decision was independent of federal law. There was no decision on Petitioner's due process claim undertaken or necessary to the Arizona court's decision. Indeed, the nature of the Petitioner's challenge was irrelevant to that court's analysis based on the application of the separation of powers principles under Arizona law.

To be "adequate," the state law or rule upon which the state court's ruling rests must be "firmly established" and "regularly applied" at the time of its application. *Harris v. Reed*, 489 U.S. 255 (1989). In reaching its decision, the Arizona Court of Appeals cited to a series

of cases noting the limits on the Arizona courts' power to "exercise discretion constitutionally assigned to other branches of government." (Exhibit 20, Mem. Dec. At 9, ¶ 13 (citing *Mecham v. Gordon*, 156 Ariz. 297, 301-02, 751 P.2d 957, 961-62 (1988); *Cardon Oil Co. v. City of Phoenix,* 122 Ariz. 102, 104 n.2, 593 P.2d 656, 658 n.2 (1979) and *Shelby Sch. v. Ariz. State Ed. of Educ*., 192 Ariz. 156, 164, g[ 26, 962 P.2d 230, 238 (App. 1998).)   While the cases cited by the Arizona court may not have directly addressed executive authority over clemency decisions, the extension was not unknown.  *See e.g. Wigglesworth v. Mauldin*, 195 Ariz. 432, 436, 990 P.2d 26, 30 (App.1999) ("courts traditionally have taken the position that clemency lies outside the adjudicative process and generally escapes review by the courts"); and *McDonald v. Thomas,* 198 Ariz. 590, 596, 12 P.3d 1194, 1200 (Ariz.App. 2000), *opinion vacated on other grounds*, 202 Ariz. 35, 40 P.3d 819 (2002) ("governor's commutation decisions generally fall outside the purview of the adjudicatory process").

## B.  PROTECTED LIBERTY INTEREST

Even if this Court could reach the merits of Petitioner's claim, the claim is without merit both because Petitioner fails to show a protected liberty interest and because Petitioner fails to show a denial of substantive due process.

Petitioner argues that the violation of his due process rights occurred on February 17, 2004, when the Board, the Arizona Department of Corrections, and the State arbitrarily and capriciously refused "to correct the effects of the Board's error (by commuting sentences A16 and B01) [thereby violating] Petitioner's Due Process rights under the Fourteenth Amendment to the United States Constitution."  (Petition, #1 at 22, 29 ¶ 6.)

Petitioner presents a claim of denial of substantive due process under the Fourteenth Amendment.  "Substantive due process protects individuals from arbitrary deprivation of their liberty by government." *Brittain v. Hansen,* 451 F.3d 982, 991 (9th Cir. 2006). However, the existence of a right of due process is dependent upon the existence of a protected interest.

In *Olim v. Wakinekona*, 461 U.S. 238 (1983), the Supreme Court held that when a

state's laws "place no substantive limitations on official discretion[, they] create no liberty interest entitled to protection under the Due Process Clause." *Id.* at 249.  Conversely, in *Board of Pardons v. Allen*, 482 U.s 369 (1987), the Court held that where state statutes made a grant of parole mandatory "upon certain findings," it did create a protected liberty interest.

However, the Ninth Circuit has long held that "Arizona places no substantive limitations on official discretion over the ultimate decision to grant or deny clemency," and thus they "'create no liberty interest entitled to protection under the Due Process Clause.'" *Woratzeck v. Arizona Bd. of Executive Clemency,* 117 F.3d 400, 404 (9th Cir. 1997) (quoting *Olim*, 461 U.S. at 249).

With specific regard to clemency under the Disproportionality Review Act, the Arizona Court of Appeals has concluded that in the ordinary course there are no restrictions on the Governor's discretion, and thus the Act "fails to create a protected liberty interest regardless of the Board's recommendation of commutation." *Wigglesworth v. Mauldin,* 195 Ariz. 432, 436, 990 P.2d 26, 30 (Ariz.App. 1999).

Ordinarily, it would seem that would end the discussion.  However, there is the additional provision under the Act that provides for automatic approval where there is no denial within 90 days.  In *Wigglesworth*, the Arizona court acknowledge that provision, but dismissed any effect, finding in that case that delivery of the Board's decision to the Governor had been delayed for some three months, so that the Governor's denial another two months later was timely and still discretionary.  195 Ariz. at 436 n. 3, 990 P.2d at 30 n. 3.

The instant case is not much different.  In *Wigglesworth*, the Board reached a decision in March, but failed to deliver it until June.  Had they timely delivered it, the Governor's August denial would have been untimely and the recommendation would have automatically become effective in June.  In Petitioner's case, the Board reached a decision on the omitted counts in 1995, but effectively failed to deliver it until after the rehearing in December 2004.  Had they timely delivered it, the Governor's February, 2005 denial would have been untimely, and the recommendation would have automatically become effective in 1994.

Petitioner protests that he should have the benefit of the Board's decision despite their

1   failure to express it and deliver it to the Governor, and that failure to grant him that benefit

2   is a denial of due process.  Had the Board in fact delivered its recommendation on the

3   omitted counts in 1994, and had the Governor failed to act in a timely fashion, then arguably

4   there would have been no discretion permitted in the Governor's act, and a protected liberty

5   interest could have arisen in the automatic approval.

6        But the recommendation was not delivered.  This Court, like the Arizona Court,

7   cannot deprive the Arizona Governor of his right to exercise discretion over clemency

8   decisions by retroactively deeming a recommendation delivered that in fact was not

9   delivered.

10       The Arizona statutes granted Petitioner a protected liberty interest in having the Board

11  consider his case and make a recommendation, and to have the Arizona Governor exercise

12  his discretion over that recommendation.  Petitioner has not been denied those rights, albeit

13  they were not fulfilled until the 2004 Board proceeding.

14       What Petitioner did not have a protected liberty interest in was a windfall from the

15  combined oversights of the Board and the Governor, the former in its communication of its

16  recommendation, and the latter in the usual manner of communicating his denial.[3]  While

17  Petitioner convincingly opines that had the Board issued its recommendation, the Governor

18  would have issued a defective denial.  However, "a mere expectation of a benefit-even if that

19  expectation is supported by consistent government practice-is not sufficient to create an

20  interest protected by procedural due process." *Board of Pardons v. Allen,* 482 U.S. 369, 382

21  (1987) (O'Connor, J., dissenting) (citing *Board of Regents v. Roth*, 408 U.S. 564 (1972)).

22  As the  Court put it when discussing the prejudice standard in evaluating the effectiveness

23  of counsel, "[a] defendant has no entitlement to the luck of a lawless decisionmaker . . . [t]he

24

25       [3] If this Court were authorized to engage in a purely equitable resolution, disregarding
     the legal technicalities,  and to give effect to the intents of the participants, the result would
26   be a denial of relief, inasmuch as both Governor Symington in 1995 and Governor
     Napolitano in 2006 evidenced an intent to deny Petitioner clemency. "[H]e who seeks equity
27   must do equity in the transaction in respect to which relief is sought." *McQuiddy v. Ware,*
     87 U.S. 14, 19 (1873).
28

1  assessment of prejudice should proceed on the assumption that the decisionmaker is

2  reasonably, conscientiously, and impartially applying the standards that govern the decision.

3  It should not depend on the idiosyncracies of the particular decisionmaker." *Strickland v.*

4  *Washington,* 466 U.S. 668, 695 (1984).

5      Without a protected liberty interest, Petitioner was not constitutionally entitled to due

6  process of law, and cannot now obtain habeas relief based upon its purported denial.

7

8  **C.  DUE PROCESS NOT DENIED**

9      Even if Petitioner had a protected liberty interest, Petitioner has not shown a denial

10  of due process.  Petitioner argues that his due process rights were violated on February 17,

11  2004, when his requests to honor a commutation of the omitted sentences was

12  administratively denied.[4]  Petitioner argues that this decision was "arbitrary and capricious."

13      "[T]he due process guarantee does not entail a body of constitutional law imposing

14  liability whenever someone cloaked with state authority causes harm."  *County of*

15  *Sacramento v. Lewis,* 523 U.S. 833, 848 (1998). The Supreme Court's "cases dealing with

16

17  _____

18      [4]  It is undisputed that the Board initially violated the Disproportionality Review Act
    by failing to issue a decision on the omitted counts. The Act mandated that "[a]fter a hearing
19  . . . the board of executive clemency *shall* recommend" clemency if the requisite findings are
    made."  Ariz. Sess. Laws 1995, Ch. 365 § 1(F).  However, federal habeas relief is not
20  available for alleged errors in the interpretation or application of state law.  *Estelle v.*
    *McGuire*, 502 U.S. 62 (1991).  To qualify for federal habeas relief, an error of state law must
21  be "sufficiently egregious to amount to a denial of equal protection or of due process of law
    guaranteed by the Fourteenth Amendment."  *Pully v. Harris*, 465 U.S. 37, 41 (1984).  To
22  sustain such a due process claim founded on state law error, Petitioner must show that the
    state court "error" was "so arbitrary and fundamentally unfair that it violated federal due
23  process."  *Jammal v. Van de Kamp*, 926 F.2d 918, 920 (9th Cir. 1991) (quoting *Reiger v.*
    *Christensen*, 789 F.2d 1425, 1430 (9th Cir.1986)).  Here, there was nothing egregious,
24  arbitrary or surprising about the Board's conduct. In Petitioner's own words, it was merely
    an "inadvertent clerical error." (Exhibit 9, Complaint at 7, ¶ 24.)  Clerical errors do not
25  amount to a denial of due process. *See e.g. U.S. v. Martinez*, 837 F.2d 861, 864 (9th Cir.
    1988) (clerical error resulting in seven year delay in commencement of sentence); and *U.S.*
26  *v. Mendez-Casillas,* 272 F.3d 1199, 1206 (9th Cir. 2001) (due process standard "hardly met
    by a clerical error on his deportation papers").  Thus the Board's conduct in the original
27  commutation proceedings cannot be deemed a denial of due process.
28

1    abusive executive action have repeatedly emphasized that only the most egregious official

2    conduct can be said to be 'arbitrary in the constitutional sense'." *Id.* at 846.  Establishing that

3    an executive abuse of power is constitutionally cognizable, requires a showing of an abuse

4    of power "which shocks the conscience." *Id.*  "Thus, in a due process challenge to executive

5    action, the threshold question is whether the behavior of the governmental officer is so

6    egregious, so outrageous, that it may fairly be said to shock the contemporary conscience."

7    *Id.* at 847, n.8.

8          Here, there was no arbitrary or conscience shocking action by the Board, ADOC, or

9    the state.  To the contrary, as evidenced by the decision of the Arizona Courts in the special

10   action proceedings, there was no legal basis under Arizona law for acknowledging a grant

11   of clemency.   Wrongful or unfair as it might have been, the failure of the Board to have

12   issued its recommendation precluded there from having been an exercise of the Governor's

13   clemency power, whether by affirmative grant or by dilatory denial.[5]  The Board, ADOC, and

14   the state were left without a legitimate grant of clemency to justify a release of Petitioner.

15   The action of an executive official motivated by a refusal to violate state law can hardly be

16   deemed arbitrary, nor can it be deemed to shock the conscience.  A contrary result would

17   saddle executive officials with the untenable position of having to determine whether a state

18   statute passed constitutional muster before they complied with it.

19         Even if the decision to refuse to acknowledge a grant of clemency had turned out to

20   be incorrect under state law, that would not render the act arbitrary.  "We do not require

21   police officers to act as legal experts to avoid violating the Constitution; substantive due

22   process secures individuals from 'arbitrary' government action that rises to the level of

23   'egregious conduct,' not from reasonable, though possibly erroneous, legal interpretation."

24   _____

25         [5] That is the fundamental difference between Petitioner's case and *McDonald*, where
     the Arizona Courts ordered the delivery of the commutation, rather than a rehearing. In

26   *McDonald*, the recommendation had been delivered and the Governor had been given the
     opportunity to properly deny it.  In Petitioner's case, the Governor received no such

27   opportunity, thus justifying the requirement that Petitioner, as he puts it, "run the gauntlet
     of the Board's recommendation and the Governor's review and signature again in 2004."

28   (Reply, #15 at 5-6.)

1 *Brittain v. Hansen*, 451 F.3d 982, 996 (9th Cir. 2006).[6]

2

3 **D. SUMMARY**

4     Petitioner's claims were rejected by the state courts on the independent and adequate

5 state grounds of the delegation of the clemency powers. Accordingly, consideration of his

6 claim in this habeas court is barred. Alternatively, Petitioner has failed to show the existence

7 of a protected liberty interest in the issuance of a default grant of clemency. Further

8 Petitioner has failed to show that the denial of such a grant was arbitrary and capricious or

9 otherwise a denial of substantive due process. Having found no constitutional violation, this

10 Court need not consider the limitations on habeas relief under 28 U.S.C. § 2254(d) ("contrary

11 to or unreasonable application of federal law" or "unreasonable determination of the facts").

12

13                                    **IV.  RECOMMENDATION**

14     **IT IS THEREFORE RECOMMENDED** that the Petitioner's Petition for Writ of

15 Habeas Corpus, filed November 28, 2007 (#1) be **DENIED**.

16

17                                **V. EFFECT OF RECOMMENDATION**

18     This recommendation is not an order that is immediately appealable to the Ninth

19 Circuit Court of Appeals. Any notice of appeal pursuant to *Rule 4(a)(1), Federal Rules of*

20 *Appellate Procedure*, should not be filed until entry of the district court's judgment.

21     However, pursuant to *Rule 72(b), Federal Rules of Civil Procedure,* the parties shall

22 have ten (10) days from the date of service of a copy of this recommendation within which

23 to file specific written objections with the Court. *See also* Rule 8(b), Rules Governing

24 _____

25     [6]  The undersigned does not reach Respondent's arguments that the remedy of
26 rehearing selected by the state court is all to which Petitioner is entitled. That argument
would only be relevant if Petitioner just challenged the original failure to issue a
27 recommendation. Instead, Petitioner challenges the refusal to imply a defective denial of an
undelivered recommendation. If that refusal were wrongful, then a mere grant of rehearing
28 would seem to be no remedy at all.

1  Section 2254 Proceedings.   Thereafter, the parties have ten (10) days within which to file

2  a response to the objections.   Failure to timely file objections to any factual or legal

3  determinations of the Magistrate Judge will be considered a waiver of a party's right to *de*

4  *novo* consideration of the issues. *See United States v. Reyna-Tapia*, 328 F.3d 1114, 1121 (9th

5  Cir. 2003)(*en banc*).

6

7  DATED: September 11, 2008      _____

8                                            JAY R. IRWIN
                                              United States Magistrate Judge
9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28